# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH WAGNER, | : | No. 3:07cv1310 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| PENNSYLVANIA CAPITOL | : | |
| POLICE DEPARTMENT, | : | |
| GREGORY A GREEN | : | |
| RICHARD J. SHAFFER, and | : | |
| ROBERT J. DILLARD, | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court is defendants' motion for summary judgment (Doc. 11).

Having been fully briefed and argued, the matter is ripe for disposition.

## Background[1]

This case concerns the employment of Plaintiff Keith Wagner, a Pennsylvania

Capitol Police officer who has a history of illness which has kept him out of work.

(Defendants' Statement of Material Facts (Doc. 12) (hereinafter "Defendants'

Statement") at ¶ 1).  The individual defendants are: Richard Shaffer, Superintendent

of the Capitol Police; Gregory Green, now-retired former director of Human

Resources for the Pennsylvania Department of General Services ("DGS"); and

---

[1]Because of the outcome of this decision, the court has provided only a limited recitation of the facts provided by the parties.

Robert Dillard, Deputy Superintendent of the Capitol Police.  (Id. at ¶¶ 3-5).

Wagner began working for the Capitol Police in 1988.  (Id. at ¶ 2).  As part of his patrol responsibilities, plaintiff carries a service weapon.  (Id. at ¶ 6).  Plaintiff is a member of a union, the Fraternal Order of Police.  (Id. at ¶ 7).  As a member of this union, he is covered by a collective bargaining agreement that contains a grievance process.  (Id.).  Wagner has previously used this process in connection with his claims here, but without the assistance of an attorney.  (Id.; Plaintiff's Statement of Material Facts (Doc. 15) (hereinafter "Plaintiff's Statement") at ¶ 7).

In September 2005, plaintiff began to have seizures.  (Defendants' Statement at ¶ 8).  He had his last seizure in October 2005.  (Id.).  Plaintiff insists that he continues to suffer from a seizure disorder; plaintiff's doctor diagnosed him as suffering from seizures in 2006.  (Plaintiff's Statement at ¶ 8).  Plaintiff took seizure medication until November 2007.  (Defendants' Statement at ¶ 9).  Plaintiff stopped taking the medication at this point, but reported in his June 2008 deposition that he has since remained seizure-free.  (Id.).

Plaintiff also suffers from anxiety attacks, which continue to this day.  (Id. at ¶ 10).  Despite these continuing attacks, plaintiff has stopped taking his anxiety medication in the past year.  (Id. at ¶ 11).  At his deposition, plaintiff reported that he could not recall the last time he had seen a physician about this condition.  (Plaintiff's Deposition, Exh. A. to defendants' statement, at 13).  He guessed that his last visit had come within the previous year.  (Id.).

Plaintiff was out of work due to his medical condition following his September 2005 seizure.  (Defendants' Statement at ¶ 12).  His neurologist cleared him to return to light duty work on October 17, 2005.  (Id.).  The neurologist ordered restrictions of no access to firearms, no driving, no patrol work and a desk job only.  (Id.).  These restrictions were to persist until plaintiff "achieved two months seizure free."  (Id.).

Defendants contend that the Capitol Police had no light-duty assignment available for plaintiff in October 2005.  (Id. at ¶ 13).  They insist that plaintiff's restrictions limited him to assignment to the communications center.  (Id.).  The Capitol Police were short staffed, and during that period assigned only one officer to the area.  (Id.).  Supervisors did not want to put plaintiff in a posting by himself because of his medical condition.  (Id.).  Defendants contend that they denied plaintiff's light duty request for these reasons.  (Id. at ¶ 14).  Plaintiff insists that there was a vacant position, and that he was in fact placed in such a position in 2006.  (Plaintiff's Statement at ¶ 13).  At that point, defendants allowed him to work alone in the job.  (Id.).  In any case, plaintiff contends that defendants normally assigned three people, two patrol officers and a supervisor, per shift.  (Id.).  From plaintiff's perspective, that staffing meant nine slots per day were available for work.  (Id.).  There is a disagreement among the parties as to whether plaintiff's doctor mandated that he work with someone else.

At some point after this initial refusal, Superintendent Shaffer decided that two

3

officers should work in the communications center.  (Defendants' Statement at ¶ 15).

Plaintiff contends that Defendant Green, who defendants cite for Superintendent's

Shaffer's decision, lacks personal knowledge of the Superintendent's actions.

(Plaintiff's Statement at ¶ 15).  In any case, Wagner contends that he knows that

other officers were allowed to work in light-duty jobs, but he was not.  (Id.).  After this

decision, plaintiff in January 2006 returned to work in a light duty capacity at the

Capitol Police's communications center.  (Defendants' Statement at ¶ 16).  Plaintiff

contends that this decision came only after he filed an internal discrimination

complaint.  (Plaintiff's Statement at ¶ 16).

On April 17, 2006, Wagner was released to full duty work, or work without

restrictions.  (Defendants' Statement at ¶ 17).  Plaintiff contends that he was still

under doctor's care for seizures and anxiety at this point.  (Plaintiff's Statement at ¶

17).  Defendants contend that plaintiff was absent from work from April 24, 2006 until

June 2006.  (Defendants' Statement at ¶ 18).  Defendants have evidence in the form

of a May 26, 2006  letter from Richard Shaffer to the plaintiff regarding his absences

(Exh. F. to Defendants' Statement) and a June 9, 2006 letter to plaintiff from Green

to plaintiff informing plaintiff that he had been approved for sick leave from May 11,

2006 to July 20, 2006.  (Id.).  Plaintiff contends that Wagner testified he was working

from April to June 2006.  (Plaintiff's Statement at ¶ 18).

Defendants informed plaintiff on November 30, 2006 that he had used 932

hours of sick leave without pay and had only 116 hours of such leave remaining.

4

(Defendants' Statement at ¶ 25).  On January 25, 2007, the Bureau of Human Resources requested updated medical certification from plaintiff because he had been on light duty status since June 2006.  (Id. at ¶ 26).  The Human Resources Bureau sent a similar letter on March 12, 2007.  (Id. at ¶ 27).  On April 11, 2007, the Bureau of Human Resources informed plaintiff that his light duty assignment would end on April 27, 2007.  (Id. at ¶ 28).  The letter gave Wagner the option of returning to full duty work or using paid or unpaid leave.  (Id.).

On April 17, 2007, plaintiff's attorney sent the Bureau a letter informing the Bureau he suffered from a disability and requesting an accommodation to allow him to continue to work.  (Id. at ¶ 29).  The Bureau treated the letter as a request for an accommodation and sent plaintiff a letter containing the form he needed to make such a request.  (Id. at ¶ 30).  Plaintiff responded by returning a letter from his doctor, Elaine Rissinger, that indicated that he could not perform two of the essential functions of his job.  (Id. at ¶ 31).  This inability to perform two essential functions of his job became the basis by which defendants concluded that no reasonable accommodation was available for plaintiff.  (Id. at ¶ 32).  The parties disagree about whether plaintiff ever filled out a request for an accommodation himself.  (Id. at ¶ 33; Plaintiff's Statement at ¶ 33).  In any case, he did not provide any request form until May or June, 2007.  (Defendants' Statement at ¶ 34).

Plaintiff filed grievances over the issues involved in this lawsuit.  (Id. at ¶ 35).  Plaintiff filed a grievance in October 2005 regarding the State Police's refusal to

return him to light duty status in that month.  (Id. at ¶ 36).  Defendants took the

position that plaintiff's grievance could not be arbitrated.  (Id.).  They also insist that

the union withdrew the grievance.  (Id.).  Plaintiff disputes this reading of the

document.  (Plaintiff's Statement at ¶ 36).  Plaintiff also field a grievance in May

2007, arguing that he should have been returned to work in May 2007.  (Defendants'

Statement at ¶ 37).  Plaintiff contends that the reason he was not working is because

he was improperly forced to provide medical clearance to return to work.  (Plaintiff's

Statement at ¶ 37).

Plaintiff's doctor provided a note to the Capitol Police on June 8, 2007 which

cleared him for all essential job functions and full-time status.  (Defendants'

Statement at ¶ 38).  Plaintiff claims he took these steps because he had been

threatened with what amounted to forced retirement if he did not.  (Plaintiff's

Statement at ¶ 38).  After this release, defendants returned plaintiff to his job, where

he continues full-time employment.  (Defendants' Statement at ¶ 38).  Plaintiff

contends that his physician did not agree with this assessment, but his therapist

went along to save his job.  (Plaintiff's Statement at ¶ 38).

Plaintiff filed a complaint in the Court of Common Pleas of Lackawanna

County on July 5, 2007.  Count I of the complaint alleges that defendants violated

plaintiff's constitutional due process rights by depriving him of his position without

any sort of pre- or post-deprivation hearing.  Count II alleges a failure-to-

accommodate claim under the Pennsylvania Human Relations Act (PHRA), 43 Pa.

C. S. § 951, *et seq.*, against all the defendants.  Plaintiff had a seizure disorder and

requested an accommodation for this disability in order to return to work.

Defendants allegedly would not accommodate him, and required Wagner to obtain

an additional certification that he could perform his job without accommodation,

which was unnecessary to allow him to resume his job.  Count III seeks individual

liability against plaintiff's supervisors, contending that they failed to allow him to

return to work, which constitutes a failure-to-accommodate under the PHRA.  Count

IV raises a "negligent supervision/retention" claim against defendants Shaffer and

Dillard.  Plaintiff contends that these supervisors knew that plaintiff was released to

return to work with accommodations, but did nothing to bring him back, causing

plaintiff injury.

Defendants filed a notice of removal with this court on July 19, 2007.  (Doc. 1).

They answered the complaint on September 11, 2007.  The parties then engaged in

discovery.  At the end of the discovery period the defendant filed a motion for

summary judgment.  The parties briefed the issue and the court held argument,

bringing the case to its present posture.

**Jurisdiction**

Because plaintiff brings this complaint pursuant to 42 U.S.C. § 1983, the court

has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

United States.").  The court has supplemental jurisdiction over plaintiff's state law

claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Legal Standard**

The case is before the court on defendants' motion for summary judgment. Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

 In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477

U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit

under the governing law.  Id.  Where the non-moving party will bear the burden of

proof at trial, the party moving for summary judgment may meet its burden by

showing that the evidentiary materials of record, if reduced to admissible evidence,

would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v.

Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the

burden shifts to the nonmoving party, who must go beyond its pleadings, and

designate specific facts by the use of affidavits, depositions, admissions, or answers

to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**Discussion**

The defendants raise several grounds for granting summary judgment.  The

court will address those grounds as appropriate.

### A.  Immunity for the State Agency

The Defendant state agency argues that it cannot be sued under Section

1983.  Plaintiff responds that the Defendant Agency waived any immunity by

removing the case from state court.

The court finds that the Defendant Agency cannot be liable to suit for any

claims brought pursuant to section 1983.  Plaintiff correctly recites the principal,

enunciated in Lapides v. Board of Regents of University System of Georgia, 535

U.S. 613, 624 (2002), that "the State's action joining the removing of [a] case to

federal court waive[s] its Eleventh Amendment immunity" and makes it liable to suit

9

in federal court.  At the same time, however, the court in <u>Lapides</u> considered only

whether removing a case constituted a waiver of immunity from state-law claims.

The court noted that the only federal claim in <u>Lapides</u> was brought pursuant to

Section 1983, and the court had "held that a State is not a 'person' against whom a §

1983 claim for money damages might be asserted."  <u>Id.</u> at 617 (citing <u>Will v.</u>

<u>Michigan Dept. of State Police</u>, 491 U.S. 58, 66 (1989)).  The reason that a State

cannot be sued under Section 1983, then, is not simply sovereign immunity, but the

fact that Congress, in the statute relied on by the plaintiff, did not contemplate

making states liable.[2]  Removing the case to federal court does not change the fact

that a state cannot be sued under Section 1983 for monetary damages.  The court

will therefore grant the Defendant Agency summary judgment on Count I.

### B.  Claims Against the Individual Defendants on Count I

The individual defendants contend that they cannot be liable on plaintiff's due

process claims stated in Count I.[3]  Defendants argue that plaintiff cannot prevail on

---

[2]The court recognizes that the Third Circuit Court of Appeals has recently ruled that "the Commonwealth's removal of federal-law claims to federal court effected a waiver of immunity from suit in federal court."  <u>Lombardo v. Pennsylvania Dept. of Public Welfare</u>, 540 F.3d 190, 198 (3d Cir. 2008).  Here, however, the Agency does not claim immunity, but that the statute in question, 42 U.S.C. § 1983, does not, by its terms, permit a state to be sued.  Removal cannot change the terms of liability Congress supplied for the statute, and the Agency cannot be liable on this claim for monetary damages.

[3]The plaintiff does not dispute that he cannot prevail on a substantive due process claim because his position with the State Police did not constitute a property or liberty interest subject to the protection of substantive due process.  He could not.  <u>See</u> <u>Nicholas v. Pennsylvania State University</u>, 227 F.3d 133, 142-43 (3d Cir. 2000) (holding that tenured public employment "is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the

his procedural due process claim because he received all of the process he was due under his union's collective bargaining agreement.  Plaintiff contends that he suffered a procedural due process violation when the defendants refused to provide him with any process before preventing his return to work after plaintiff's doctor certified that he could resume his job with certain restrictions.

A party asserting a procedural due process claim must show "that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). In this case, the dispute appears to center around the second of these questions, and defendants do not argue with plaintiff's contention that their actions deprived him of an interest protected by the Fourteenth Amendment. The court will therefore focus on the question of whether plaintiff received the process he was due in this situation.

"[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541 (1985) (quoting Morrisey v. Brewer, 408 U.S. 471, 481 (1972)).  Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances.'" Matthews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961)).  Instead, courts are to

_____

Constitution" and is thus not subject to the protection of substantive due process).

11

inquire into the circumstances of the deprivation to determine what process is required.  Id.  Accordingly, "'[consideration] of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.'" Wolff v. McDaniel, 418 U.S. 539, 560 (1974) (quoting McElroy, 367 U.S. at 895).

Three factors generally guide this determination: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Matthews, 424 U.S. at 335.  The Third Circuit Court of Appeals has concluded that "[a]t a minimum, due process requires notice and a hearing."  Wilson v. MVM, Inc., 475 F.3d 166, 178 (3d Cir. 2007). Still, "when that notice and hearing must be provided and how intensive the hearing must be is a determination that depends on the balancing of [the] three interests" articulated in Matthews.  Id.

At issue here is apparently defendant's October 19, 2005 refusal to return plaintiff to work after he provided a note from his doctor allowing him to resume light

duty.[4]  As the court understands the facts here, plaintiff voluntarily left work due to

his seizure condition in September 2005.  On October 3, 2005, Plaintiff's doctor

certified that he could return to work at a desk job on October 17, 2005, though he

could not use firearms, perform patrol work or drive.  (See Exh. A to Plaintiff's Brief

in Opposition (Doc. 14-2)).  Defendant Shaffer responded by letter on October 19,

2005, informing the plaintiff that his request for light duty had been denied "based on

the information provided by your physician."  (See Exh. B to Plaintiff's Brief in

Opposition (Doc. 14-3)).  Plaintiff would continue on unpaid leave with benefits for a

period of six months.  (Id.).  On October 19, 2005, plaintiff filed a grievance pursuant

to his union's agreement with the State Police.  (See Exh. C to Plaintiff's Brief in

Opposition (Doc. 14-4)).  He alleged that he had been treated unfairly when the

Agency refused him a light duty position, since "several officers in the past have

been assigned to the Capitol Police Dispatch Center to fulfill a light duty

assignment."  (Id.).  The arbitrator assigned to the case determined on September 1,

2006 that "the Union's grievance in this matter [was] substantively non-arbitrable,"

that no evidence would support "a violation of the cited Articles fo the [employment]

Agreement, and that the grievance should be denied.  (See Exh. R to Defendants'

Statement (Doc. 12-18) at 4).  Defendant Green then reported to the union's

grievance chairman that Department and Union officials had met and discussed

---

[4]The argument about due process has centered on this 2005 refusal to return
plaintiff to work and the grievance that followed it.  Plaintiff filed later grievances as well,
but does not appear to complain about the process he received in relation to them.

plaintiff's grievance.  (See letter, Gregory Green to Clarence Stokes, 11/15/05,  Part of Exh. R to Defendants' Statement (Doc. 12-18)).  Green reported that "at the request of the union, this grievance is being held in abeyance pending further discussion with Mr. Wagner, union representatives and management personnel." (Id.).  According to the plaintiff, no further action has occurred on this grievance.

Plaintiff first contends that defendants' initial denial of his request to return violated plaintiff's "pre-deprivation" due process rights.  Apparently, plaintiff contends that the failure to reinstate him when he provided a note from his doctor making him available for light-duty work amounts to a taking of his property in employment.  As such, he should have had notice and a hearing before the defendants decided not to provide him with that job.  See Dee v. Borough of Dunmore, 549 F.3d 225, 232 (3d Cir. 2008) (emphasizing that if a State terminates a protected interest generally "it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective.") (quoting Loudermill, 470 U.S. at 542). The court rejects this argument.  First, plaintiff had process in this matter: he was out on leave and apparently knew that he had to apply for reinstatement when his physical condition allowed.  He thus had notice of what was required to regain his job.  He provided the defendants with information that he claimed entitled him to return to work in a light-duty position.  The evidence indicates that defendants examined this information, but did not find a light-duty position for the plaintiff at that time.  As such, he had notice and an opportunity to be heard.  Given the fact that

14

plaintiff had available–and made use of–a grievance procedure to contest this decision, and though plaintiff's return to work may have been delayed, the risk of an erroneous deprivation was small, and requiring additional procedures when such procedures were available to challenge the decision would be wasteful.  Thus, the three factors courts are to consider in evaluating available procedures demonstrate the adequacy of the process here.  See  Matthews, 424 U.S. at 335.

Indeed, the court fails to see the distinction that plaintiff attempts to draw between the process due him before the initial denial of his request to return to work and the process due him in respect to the grievance he filed.  Plaintiff argues that "before the Defendants refused to allow Wagner simply [sic] back to work after he provided a release, he should have been provided with the opportunity to refute whatever were Defendants alleged reasons for not allowing him back on the job." (Brief in Opposition to Motion for Summary Judgment (Doc. 14) at 3).  Plaintiff appears to have received exactly this process.  He applied for reinstatement, and was informed that he would not be reinstated due to his medical restrictions.  Plaintiff then filed a grievance, asking that he be informed of the reasons for defendants' decision and allowed to dispute them.  The grievance procedure addressed these reasons, determining that the union contract did not provide for arbitration over failure to assign an officer to light duty work.  In that sense, plaintiff received exactly what he claims he sought.

Next, plaintiff contends that he was deprived of his due process rights in his

15

grievance hearing.  As a general matter, "[w]here a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, we have held that those procedures satisfy due process requirements 'even if the hearing conducted by the Employer . . . [was] inherently biased.'"  Dykes v. Southeastern Pennsylvania Transp. Authority, 68 F.3d 1564, 1571 (3d Cir. 1995) (quoting Jackson v. Temple University, 721 F.2d 931, 933 (3d cir. 1983)).  Though plaintiff concedes that as a general matter an employee who makes use of a grievance procedure has received all of the process due before  a deprivation, he argues that he is still waiting for a final determination on his grievance after three years, and that this failure to act constitutes a constitutional violation.  Plaintiff does not cite to any cases for this proposition, and, indeed, plaintiff would have no claim if the final outcome of the case was not to his satisfaction.  In any case, plaintiff's claims on this matter belie the facts of the case recited above.  The grievance in this case was ruled on, and plaintiff's position was rejected.  Since that initial ruling, his *union* has apparently held the claim in abeyance, refusing to take any action. Plaintiff therefore received the process provided by the grievance procedures, and a failure to appeal is more properly the subject of proceedings against the union than against the agency.  Such a claim could not be made in the context of a Section 1983 proceeding.  See, e.g., Jackson, 721 F.2d at 933; Dykes, 68 F.3d at 1572 (finding that "[a]lthough [the] union could and did decide not to take [the employee's] claim to arbitration, it did so under a duty of fair representation, and may be sued for

breach of that duty if its 'conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'") (quoting <u>Armstrong v. Meyers</u>, 964 F.2d 948, 950 (9th Cir. 1992)).  This case contains no claim against the union.  As such, plaintiff received all of the process he was due on his grievance and the court will grant summary judgment on plaintiff's due process claim.

### C.  Claims for Negligent Supervision

Plaintiff raises a claim against Defendants Shaffer and Dillard for negligent supervision/retention, alleging that the defendants "acted with actual malice and/or engaged in willful misconduct when they took no action to prevent Officer Wagner from being harmed when agents of the Captiol Police" refused to allow plaintiff to return to work with accommodations.  (Complt. at § 32).  To the extent that this claim is a federal claim, it apparently alleges that Defendants Shaffer and Dillard violated plaintiff's constitutional rights when they did nothing to effectuate plaintiff's return to work.  Since the court has found that no constitutional violation occurred in the failure to return plaintiff to work, plaintiff cannot make out a Section 1983 claim on these grounds.  The court will therefore grant summary judgment to the defendants on this claim as well.

### D.  PHRA Claims

Plaintiff brings claims pursuant to the Pennsylvania Human Relations Act for disability discrimination.  Those claims, contained in Counts II and III, therefore, appear before this court pursuant to Pennsylvania law.  Since the court has granted

summary judgment on all of plaintiff's federal claims, the court lacks jurisdiction to hear any state-law causes of action.  The court will decline to exercise jurisdiction on these remaining claims and remand the case to the Court of Common Pleas of Lackawanna County, Pennsylvania.

**Conclusion**

For the reasons stated above, the court will grant summary judgment to the defendants on all of plaintiff's claims brought pursuant to federal law.  The court will decline to exercise its jurisdiction to hear plaintiff's supplemental state-law claims and remand the case to the Court of Common Pleas of Lackawanna County, Pennsylvania for further proceedings consistent with this opinion.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEITH WAGNER,** | : | **No. 3:07cv1310** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA CAPITOL** | : | |
| **POLICE DEPARTMENT,** | : | |
| **GREGORY A GREEN** | : | |
| **RICHARD J. SHAFFER, and** | : | |
| **ROBERT J. DILLARD,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

**AND NOW**, to wit, this 23rd day of February 2009, the defendants' motion for summary judgment (Doc. 11) is **GRANTED** in part and **DENIED** in part, as follows:

1) The motion is **GRANTED** with respect to plaintiff's federal constitutional claims contained in counts I and IV of the complaint;

2) The court declines to exercise its jurisdiction to rule on the motion in reference to plaintiff's state-law claims;

3) The case is **REMANDED** to the Court of Common Pleas of Lackawanna County, Pennsylvania for proceedings consistent with this opinion; and

5) The Clerk of Court is directed to **CLOSE** the case in this jurisdiction.

19

BY THE COURT:

s/ James M. Munley
JUDGE JAMES M. MUNLEY
UNITED STATES DISTRICT COURT